1   **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   Henry Thompson,                          No. CV 10-8009-PCT-DGC

                        Plaintiff,
10                                           **ORDER**

11  vs.

12  Apache County, a local governmental
    entity; Michael Whiting, in his official and
13  individual capacity, and Joyclynn Whiting,
    husband and wife,
14
                        Defendants.
15

16          Plaintiff filed a motion to stay the proceedings pending resolution of his EEOC

17  charge (Charge No. 846-2009-61349).  Doc. 151.  Defendants objected that the motion to

18  stay should be addressed after resolving their motions for summary judgment.  Doc. 155.

19  Defendants' motions for summary judgment have been fully briefed.  Docs. 152, 153,

20  164.  For the reasons that follow, the Court will deny Plaintiff's motion to stay, and will

21  grant in part and deny in part Defendants' motions for summary judgment.[1]

22  **I.      Background.**

23          Plaintiff Henry Thompson was an employee of Apache County and worked as

24  Director of Victim Services within the Apache County Attorney's Office.  In 2008,

25  Defendant Michael Whiting was elected County Attorney.  In January 2009, Plaintiff was

26  ────────────────

27          [1] Defendants' request for oral argument is denied because the issues have been
    fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P.
28  78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    laid off and the County Board of Supervisors voted to eliminate Plaintiff's position.

2    Plaintiff brings this suit against Defendants Whiting and Apache County, claiming the

3    following: (1) § 1983 violation of free speech and freedom of association, (2) § 1983

4    violation of freedom of religion, (3) § 1985 conspiracy to violate civil rights, (4) § 1986

5    failure to prevent a § 1985 violation, (5) § 1988 attorneys' fees, (6) breach of contract,

6    (7) wrongful termination, (8) Arizona Wage Act violation, (9) punitive damages, and

7    (10) prejudgment interest.   Doc. 35.   Defendants move for summary judgment on all

8    claims and assert an affirmative defense of after-acquired evidence.

9    **II.    Motion to Stay.**

10    The Court will deny Plaintiff's motion to stay. The Court took Plaintiff's EEOC

11    charge and potential Title VII claim into consideration when setting the case management

12    schedule.  Docs. 19, 28.  Plaintiff had the right to request a Notice of Right to Sue from

13    the EEOC because 180 days passed from the date he filed his charge.  42 U.S.C. § 2000e-

14    5(f)(1); *see also Occidental Life Ins. Co. v. Equal Emp't Opportunity Comm'n*,

15    432 U.S. 355, 361 (concluding that "a complainant whose charge is not dismissed or

16    promptly settled or litigated by the EEOC may himself bring a lawsuit, but that he must

17    wait 180 days before doing so. After waiting for that period, the complainant may either

18    file a private action within 90 days after EEOC notification or continue to leave the

19    ultimate resolution of his charge to the efforts of the EEOC.").   Plaintiff could have

20    secured the right to sue, but did not.   The Court does not find it prudent to delay

21    indefinitely the resolution of this case while awaiting EEOC action.

22    **III.    Legal Standard for Summary Judgment.**

23    A party seeking summary judgment "bears the initial responsibility of informing

24    the district court of the basis for its motion, and identifying those portions of [the record]

25    which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

26    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the

27    evidence, viewed in the light most favorable to the nonmoving party, shows "that there is

28    no genuine issue as to any material fact and that the movant is entitled to judgment as a

1   matter of law." Fed. R. Civ. P. 56(c)(2).  Summary judgment is also appropriate against a

2   party who "fails to make a showing sufficient to establish the existence of an element

3   essential to that party's case, and on which that party will bear the burden of proof at

4   trial."  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome

5   of the suit will preclude the entry of summary judgment, and the disputed evidence must

6   be "such that a reasonable jury could return a verdict for the nonmoving party."

7   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

8   **IV.      Insufficiency of Plaintiff's Briefing.**

9          Plaintiff's response (Doc. 164) violates Local Rule of Civil Procedure 56.1(e),

10   which requires a party opposing a motion for summary judgment to "include citations to

11   the specific paragraph in the statement of facts that supports factual assertions made in

12   the memoranda."  Plaintiff's 34-page response, which is chock-full of factual assertions

13   and quotations, does not contain a single citation to Plaintiff's statement of facts or the

14   record.  *See* Doc. 164.  Plaintiff apparently expects the Court to find the factual support

15   for his assertions by searching his 103-page, 585-paragraph statement of facts (Doc. 166)

16   or by scouring his more than 530 pages of attachments (Docs. 166-171).[2]

17          Plaintiff, not the Court, bears the burden of finding and presenting evidence in the

18   record.  As the Ninth Circuit has made clear, a "district court need not examine the entire

19   file for evidence establishing a genuine issue of fact, where the evidence is not set forth

20   in the opposing papers with adequate references so that it could conveniently be found."

21   *Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir.2001).  To the extent the

22   Court easily can identify support for Plaintiff's factual assertions in his statement of facts

23   and the record, the Court will consider those assertions. Where support for factual

24   assertion cannot easily be found, however, the Court will deem those assertions

25   unsupported by the record.  *See Martin v. Great Lakes Reinsurance*, 2010 WL 94120, at

26   *1, n.3 (D. Ariz. Jan. 6, 2010).  As will be seen below, this approach will itself result in

27

28          [2] Even such an effort would not necessarily be helpful because many paragraphs in
     Plaintiff's statement of facts contain no citations to the record.  *See* Doc. 176, at 3.

1 summary judgment on Plaintiff's most fact-intensive claim.

2 **V.     Summary Judgment Motions.**

3        Although the Court has reviewed all arguments made in the parties' briefs, it will

4 address only the arguments it found dispositive of the motions.

5        **A.     Claim 1 – § 1983: Speech and Association.**

6        Plaintiff claims political discrimination under 42 U.S.C. § 1983. To state a § 1983

7 claim, Plaintiff must allege the violation of a right secured by the Constitution and laws

8 of the United States, and must show that the alleged deprivation was committed by a

9 person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff

10 claims that Defendants terminated his employment in violation of his right to free speech

11 and freedom of association as guaranteed by the First and Fourteenth Amendments.

12 Doc. 35, at 9. Defendants do not contest that their actions occurred under color of law.

13 Doc. 152, at 5-6. The Court therefore must determine only whether there is a genuine

14 factual dispute as to whether Defendants denied Plaintiff his constitutional rights to free

15 speech and freedom of association.

16        **1.     Mr. Whiting.**

17        Plaintiff cites a line of Supreme Court cases addressing political patronage claims.

18 Those cases hold that the First and Fourteenth Amendments protect public employees

19 from discharge solely because of their political beliefs. An employer engages in

20 patronage dismissals when a newly elected or appointed public officer fires existing

21 employees on the basis of their political beliefs or loyalties. *Elrod v. Burns*, 427 U.S.

22 347, 353 (1976). Justices Stewart and Blackmun limited *Elrod* with their concurrence,

23 holding that "a nonpolicymaking, nonconfidential government employee [cannot] be

24 discharged or threatened with discharge from a job that he is satisfactorily performing

25 upon the sole ground of his political beliefs." *Id.* at 375 (Stewart, J., concurring). The

26 Supreme Court refined the patronage dismissal doctrine in *Branti v. Finkel*, 445 U.S. 507

27 (1980), holding that "the ultimate inquiry is not whether the label 'policymaker' or

28 'confidential' fits a particular position; rather, the question is whether the hiring authority

1    can demonstrate that party affiliation is an appropriate requirement for the effective

2    performance of the public office involved." *Id.* at 518.  To prevail in this type of action,

3    it is sufficient for Plaintiff to prove that he was discharged "solely for the reason that [he]

4    was not affiliated with or sponsored by [a political] [p]arty." *Id.* at 517 (quoting *Elrod*,

5    427 U.S. at 350).  Unless Defendants can demonstrate an "overriding interest" of "vital

6    importance" requiring that a person's private beliefs conform to those of the hiring

7    authority, his beliefs cannot be the sole basis for depriving him of continued public

8    employment. *Id.* at 516 (quoting *Elrod*, 427 U.S. at 362, 368).  The Ninth Circuit has

9    made clear that the patronage dismissal doctrine "does not extend to adverse employment

10   actions motivated by the employee's *personal*, rather than political, loyalties." *Nichols v.*

11   *Dancer*, 567 F.3d 423, 428 (9th Cir. 2009) (emphasis added).

12          Plaintiff asserts that there are two "wings" of the Democratic Party in Apache

13   County, but cites only to the affidavits of Criss Candelaria and Robyn Rogers in support.

14   Doc. 166 at 41, ¶ 68; Doc. 166 at 49, ¶¶ 8-10.  The Candelaria affidavit asserts that there

15   is such a division in the party, but cites largely to his political disagreements with Mr.

16   Whiting.    Doc. 166-1 at 46-55.  Mr. Candelaria asserts that he stands for clean

17   government and Mr. Whiting does not. *Id.*  Mrs. Rogers says nothing about two wings of

18   the party, stating only that she is politically opposed to Mr. Whiting.  Doc. 170 at 27-28.

19   This evidence of political disagreement within the Democratic Party in Apache County –

20   not an uncommon phenomenon in any political party – does not support a conclusion that

21   there are two distinct factions akin to separate political parties.  And Plaintiff cites no

22   authority to suggest that patronage claims can arise out of personal political

23   disagreements.

24          Moreover, the evidence in this case suggests that issues between Plaintiff and

25   Whiting were due to Plaintiff's lack of personal support for Whiting rather than

26   Plaintiff's political views or affiliation.  When Whiting suggested he might run for office,

27   Plaintiff said "[g]o for it."  Docs. 152 at 9-10; 154 at 13; 164 at 14.  The parties disagree

28   as to whether this statement and other actions, such Plaintiff's providing media contacts

1   for Whiting's campaign, indicated Plaintiff's support for Whiting.  *See, e.g.*, Docs. 154,

2   at 13; 164, at 15.  But Plaintiff does not assert that he politically supported Whiting's

3   opponent or was active in his opponent's campaign, and neither side disputes that

4   Plaintiff and Whiting belong to the same political party.  Docs. 154, at ¶¶ 67-68; 166, at

5   ¶¶ 67-68.   In his deposition, Plaintiff explained that "the situation [involving media

6   contacts] had nothing to do with . . . Michael Whiting.  It was two families that dislike

7   one another.   And one family was supporting Criss Candelaria.   So the other family

8   wanted me to support Michael Whiting.  It had nothing to do with me. So they asked me

9   to contact Michael Whiting.  So I did."  Doc. 154-2 at 69; *see also* Docs. 152, at 2; 154,

10  at ¶¶ 67-68; 166, at ¶¶ 67-68.

11          Plaintiff has failed to present sufficient evidence to support a political patronage

12  claim.  Although Plaintiff alleges that he was terminated for not being a "political ally to

13  Mr. Whiting and did not have the same political affiliation" (Doc. 35, at 9), the facts

14  ascertainable from the papers suggest that the dispute arose over personal political

15  disagreements and loyalties rather than political-party alliances.  *See* Docs. 164 at 13

16  (focusing on personal disagreements between Whiting and outgoing county attorney

17  Criss Candelaria).

18          Another line of First Amendment cases holds that a plaintiff may recover for

19  constitutional violations if (1) he engaged in constitutionally protected activity, (2)  he

20  was subject to adverse action by Defendants as a result, and (3) there was a substantial

21  causal relationship between the constitutionally protected activity and the adverse action.

22  *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citation omitted);

23  *Nichols*, 567 F.3d at 426 (citation omitted).  Plaintiff does not argue that this line of cases

24  applies, nor has he shown that he engaged in protected First Amendment activity.   He

25  claims to be "a supporter of clean government and identifies with Candelaria and the

26  reformers," but admits that "he did not campaign for either [Candelaria or Whiting]."

27  Doc. 164, at 14.  Plaintiff has not identified any specific protected activity that resulted in

28  him being laid off by Defendants.   He instead relies solely on the political patronage

1    cases. For reasons stated above, he has not provided evidence to show that his

2    termination was due to political, rather than personal, loyalties. The Court will grant

3    summary judgment on Claim 1 with respect to Whiting. Fed. R. Civ. P. 56(f)(2).

4                **2.        Apache County.**

5          There is no respondeat superior liability under § 1983. *Monell v. Dep't of Soc.*

6    *Servs.*, 436 U.S. 658, 691 (1978). "[A] municipality can be found liable under § 1983

7    only where the municipality *itself* causes the constitutional violation at issue." *City of*

8    *Canton v. Harris*, 489 U.S. 378, 1203 (1989) (emphasis in original).

9          The Ninth Circuit recognizes two routes to municipal liability under § 1983. *See*

10    *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). The first route applies

11    when a municipality inflicts a constitutional injury through its policy, custom, or practice.

12    *Id.* (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)).

13    Under this route, the plaintiff must satisfy traditional § 1983 requirements and show that

14    "the municipality acted with 'the state of mind required to prove the underlying

15    violation,' just as a plaintiff does when he or she alleges that a natural person has violated

16    his federal rights." *Gibson*, 290 F.3d at 1187 (quoting *Brown*, 520 U.S. at 405).

17          The second route arises from the Supreme Court's decision in *City of Canton v.*

18    *Harris.* Under this route, a municipality becomes responsible, through its omissions, for

19    a constitutional violation committed by one of its employees. *See Gibson*, 290 F.3d at

20    1186 (citing *City of Canton*, 489 U.S. at 387). The plaintiff "must show that the

21    municipality was on actual or constructive notice that its omission would likely result in a

22    constitutional violation," and yet failed to act. *Id.* This kind of deliberate indifference is

23    found when the need to remedy the omission is so obvious, and the failure to act so likely

24    to result in the violation of rights, that the municipality reasonably can be said to have

25    been deliberately indifferent. *Id*. at 1195.

26          Plaintiff bases his claim against Apache County on the Board's hiring freeze. He

27    proceeds under an omissions theory, arguing that the "Board lifted the hiring freeze

28    despite knowing that Whiting intended to hire Hounshell, who was Whiting's political

1    sponsor." Doc. 164, at 17. As noted above, an omission theory works only when

2    Plaintiff has established an underlying constitutional violation. For reasons explained

3    with respect to the claim against Whiting, Plaintiff has failed to do so.

4          What is more, Plaintiff implies that the Board's failure to prevent Whiting from

5    hiring Hounshell was an omission that warrants municipal liability. But it is not a

6    constitutional violation to hire a political sponsor, and Plaintiff does not identify evidence

7    to show that the Board knew that by allowing Whiting to hire Hounshell, Plaintiff would

8    be deprived of a constitutional right. Furthermore, Plaintiff has not shown that the Board

9    as a whole acted with discriminatory intent. *See Kawaoka v. City of Arroyo Grande*,

10   17 F.3d 1227, 1239, *cert. denied* 513 U.S. 870 (1994) (holding that one discriminatory

11   statement by a council member, without more, was insufficient to find that the whole

12   council acted with discriminatory intent). Nor does Plaintiff offer evidence that the

13   County has a policy, custom, or practice of rewarding political supporters of elected

14   officials with jobs or terminating those who do not support the elected officials.

15   *See* Doc. 152, at 16.

16         For these reasons, along with the Court's finding above that Plaintiff has not

17   sufficiently demonstrated that he engaged in constitutionally protected activity, the Court

18   will grant summary judgment on Claim 1 with respect to Apache County.

19         **B.      Claim 2 – § 1983: Religion.**

20         Plaintiff claims that Defendants violated his right to freedom of religion as

21   protected by the First and Fourteenth Amendments. Doc. 35, at 10. Again, Defendants

22   do not dispute that the actions forming the basis of Plaintiff's complaint occurred under

23   color of law. Doc. 152, at 5-6. The Court must therefore determine whether there is a

24   genuine factual dispute as to whether Defendants denied Plaintiff his constitutional right

25   to freedom of religion.

26         **1.      Mr. Whiting.**

27         Defendants and Plaintiff argue the motion using a Title VII analysis. Docs. 152, at

28   8 (Defendants argue that when a § 1983 claim is advanced as a parallel remedy to

1    Title VII, then a Title VII analysis is appropriate); 164, at 19 (Plaintiff lays out a three-

2    part test citing a Title VII case, *Fisher v. Forestwood Co.*, 525 F.3d 972 (10th Cir.

3    2008)).   Therefore, for purposes of deciding the summary judgment motion, the Court

4    will look to Title VII.

5           In a disparate treatment claim, "a plaintiff must present evidence of 'actions taken

6    by the employer from which one can infer, if such actions remain unexplained, that it is

7    more likely than not that such action was based upon race or another impermissible

8    criterion.'"  *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) (citation omitted).

9    The burden then shifts to the defendant to produce some evidence of a legitimate,

10   nondiscriminatory reason for the employee's termination.  *Id.* (citing *McDonnell Douglas*

11   *Corp. v. Green*, 411 U.S. 792, 802 (1973)).   The plaintiff must then show that the

12   defendant's alleged reason for termination was merely a pretext for discrimination.  *Id.*

13   The Ninth Circuit has reiterated that at the summary judgment stage, "a plaintiff may

14   raise a genuine issue of material fact as to pretext via (1) direct evidence of the

15   employer's discriminatory motive or (2) indirect evidence that undermines the credibility

16   of the employer's articulated reasons."  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170-71

17   (9th Cir. 2007).

18          Plaintiff argues that he was terminated because he is not a member of the Church

19   of Jesus Christ of Latter-day Saint ("LDS).  Defendants argue that Plaintiff has failed to

20   produce evidence showing that members of the LDS faith were favored and non-

21   members disfavored in Whiting's employment decisions.   Defendants cite Plaintiff's

22   deposition, in which he states that he does not know how many non-LDS employees

23   Whiting has hired.  Doc. 152 at 17; Doc. 154, ¶ 55; Doc. 154-2 at 65.  Defendants assert

24   that Apache County is a small county with a large LDS population, that hiring LDS

25   people is therefore inevitable, and that Whiting terminated people who were LDS and

26   hired people who were not.  Doc. 152 at 14; Doc. 154, ¶¶ 54, 61-66.

27          Plaintiff counters with a veritable blizzard of factual assertions.  Doc. 164 at 1-11,

28   19-24.   Unfortunately, not one of these assertions contains a citation to Plaintiff's

1   statement of facts or the record.  The Court could undertake to scour Plaintiff's 585-
2   paragraph statement of facts in search of evidence to support the assertions, but the Court
3   cannot justify such a time-intensive undertaking for itself or its staff given the hundreds
4   of other cases that require attention in this busy district.  As a result, the Court will deem
5   Plaintiff's numerous factual assertions on the religion claim as unsupported and grant
6   summary judgment in Defendants' favor.  *See Carmen*, 237 F.3d at 1031 (district court
7   may limit its consideration to properly cited evidence; requiring otherwise would unfairly
8   deprive other litigants of the district court's time and attention).[3]

9   **2.      Apache County.**

10  Because Plaintiff has failed to create a question of fact on the underlying
11  constitutional violation, the county cannot be held liable for causing that violation
12  through policy, custom, practice, or omission.  The Court will grant summary judgment
13  for Apache County on Claim 2.

14  **C.      Claim 3 – § 1985: Conspiracy to Violate Civil Rights.**

15  Plaintiff alleges that Whiting, while still a private person, conspired with
16  Hounshell and others to terminate Plaintiff's employment because he did not share the
17  alleged conspirators' religion.  Doc. 35, at 12.  To establish a conspiracy claim under
18  42 U.S.C. § 1985(3), a plaintiff must prove: (1) a conspiracy, (2) for the purpose of
19  depriving, either directly or indirectly, any person of equal protection of the law, or of
20  equal privileges and immunities under the law, (3) an act in furtherance of the conspiracy,
21  and (4) that the plaintiff was injured in his person or property, or that the plaintiff was

23   [3] As the Court completes this order, it is 5:30 p.m. on Veteran's day, with the
24   undersigned having been at work throughout this federal holiday, including several hours
     devoted to this motion.  The undersigned will work all day tomorrow (Saturday) because
25   the Court must turn to eight other fully briefed motions sitting on its desk, must draft jury
     instructions for an ongoing criminal trial, and must read several hundred pages of briefing
26   in a complex environmental case to be argued in 10 days.  The Court's law clerks are
     similarly occupied with motions.  This is not an unusual backlog; it is a typical workload
27   in this district.  If the Court were to spend hours trying to find evidentiary support for
     Plaintiff's factual assertions – in addition to many hours already spent on this motion by
28   the Court and its law clerk – that time necessarily would be taken from the other matters
     demanding and deserving of the Court's attention.

1    deprived of any right or privilege of a citizen of the United States. *Sever v. Alaska Pulp*

2    *Corp.,* 978 F.2d 1529, 1536 (9th Cir. 1992). Further, the plaintiff must prove that the

3    deprivation of a protected right was motivated by some racial, or otherwise class-based,

4    invidious discriminatory animus. *Id.* Finally, allegations of a conspiracy must be

5    supported by specific factual allegations to establish a claim. *See Karim-Panahi v. Los*

6    *Angeles Police Department*, 839 F.2d 621, 626 (9th Cir. 1988).

7           The essence of a conspiracy is an agreement to commit an unlawful act. *U.S. v.*

8    *Jimenez Recio*, 537 U.S. 270, 274 (2003). Plaintiff claims that Defendants conspired

9    with others to deprive him of his ability to choose his religion as guaranteed by the First

10    and Fourteenth Amendments. Doc. 35, at 12. Plaintiff has not cited to any evidence that

11    indicates such an agreement. While Plaintiff explicitly names Hounshell as an alleged

12    conspirator in his complaint (Doc. 35, at 12), Plaintiff's response to Defendants' motion

13    for summary judgment on the third claim does not mention Hounshell. Instead, Plaintiff

14    claims that "there is sufficient evidence from which a jury could decide that Whiting

15    conspired with Lee, Wengert and even Platt and Young to terminate Plaintiff and others

16    and to replace them with members of the conspirators' faith." Doc. 164, at 25. Plaintiff

17    asserts that Whiting and Wengert discussed hiring Platt and eliminating Plaintiff, that

18    Brittany Rogers informed Barbara Herreras that Hounshell wanted Plaintiff's job, that

19    Young openly complained that she should be getting Plaintiff's high salary since she was

20    doing the work, and that "Lee made several statements that could only be taken as

21    meaning he was talking with Whiting about Herreras and [Plaintiff]." Doc. 164, at 25.

22    None of these alleged facts indicate an agreement between Whiting and others to commit

23    an unlawful act by depriving Plaintiff of his ability to choose his religion. Plaintiff's

24    response to the motion on the third claim does not mention Plaintiff or Whiting's

25    religion. The Court concludes that Plaintiff has not presented sufficient evidence for a

26    reasonable jury to find a conspiracy as alleged. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

27    242, 249 (1986); *see also Celotex*, 477 U.S. at 323-24 (holding that summary judgment is

28    appropriate against a party who "fails to make a showing sufficient to establish the

1    existence of an element essential to that party's case, and on which the party will bear the

2    burden of proof at trial").

3    **D.      Claim 4 – § 1986: Failure to Act to Prevent a § 1985 Violation.**

4    Plaintiff claims that Apache County violated 42 U.S.C. § 1986 by failing to

5    prevent a § 1985 violation.  Doc. 35, at 13.  Section 1986 holds liable "[e]very person

6    who, having knowledge that any of the wrongs conspired to be done, and mentioned in

7    section 1985 . . . are about to be committed, and having power to prevent or aid in

8    preventing the commission of the same, neglects or refuses to do so, *if such wrongful act*

9    *is committed . . . .*" 42 U.S.C. § 1986 (emphasis added).  As discussed above, the Court

10   does not find that Plaintiff has sufficiently established the conspiracy element of his

11   § 1985 claim.  Since Plaintiff has not met his burden of establishing the conspiracy

12   between Whiting and others, the County cannot be held liable for failing to prevent the

13   alleged conspiracy.

14   Furthermore, the facts that Plaintiff alleges in support of Claim 4 are conclusory at

15   best.  Plaintiff reiterates in his response that "Whiting and Wengert, who were both LDS,

16   conspired to hire Platt to take over Thompson's job functions and pay even before

17   Whiting submitted his 'reorganization' to the Board."  Doc. 164, at 26.  Plaintiff does not

18   cite to any specific facts to support this allegation, and mentions nothing that shows

19   Whiting and Wengert agreed to deprive Plaintiff of his right to choose his religion.

20   Plaintiff says that "Whiting knew ahead of time County management and the Board were

21   going to terminate Thompson.  The Board knew Whiting's reorganization was going to

22   result in the termination of classified positions like Johnson's but the Board allowed it."

23   Doc. 164, at 26.  Plaintiff does not cite any facts that support an inference that the County

24   was aware that Whiting had conspired to deprive Plaintiff of his rights, but merely that

25   the County was aware that Plaintiff might lose his job.  The Court finds this insufficient

26   to hold the County liable under § 1986. The Court will grant summary judgment in favor

27   of Defendants on Claim 4.

28

1

**E.     Claim 5 – § 1988: Attorneys' Fees.**

2      Because the Court has granted summary judgment on Plaintiff's claims under

3 sections 1983, 1985, and 1986, it will also grant summary judgment for Plaintiff's

4 attorneys' fees claim based on violating these sections.

5

**F.     Claim 6 – Breach of Contract.**

6      Plaintiff claims that his employment contract with Apache County allowed only

7 "for cause" termination, and that his termination constituted a breach of that contract.

8 Doc. 35, at 15.  Defendants do not dispute that Plaintiff was terminated without cause.

9 Doc. 153, at 7-9.   Instead, Defendants claim that Plaintiff can be laid off due to

10 reorganization, which they claim is what occurred here.  Doc. 153, at 8.  Both Defendants

11 and Plaintiff agree that cause is not required for a layoff due to reorganization.

12 Docs. 154, at 28 ("County policy permits the Board of Supervisors to lay off an employee

13 because of a change in duties, reorganization, or shortage of work or funds.  County

14 policy provides that a layoff may occur when a position is eliminated."); 166, at 24

15 (Plaintiff admits Defendants' factual assertion).   Plaintiff asserts, however, that his

16 termination was not the result of a true reorganization, but that the reorganization was a

17 subterfuge by Defendants to circumvent the county's merit system.  Doc. 164, at 28-29;

18 *see also* Doc. 166-1, at 8-9 (Herreras aff. ¶¶ 40-43), 49-50 (Candelaria aff. ¶¶ 16-22)

19 (asserting that the employees hired to fill the newly created positions are performing the

20 same tasks that Plaintiff and Herreras performed in their now eliminated positions).

21      In *Fleming v. Pima County*, 125 Ariz. 523 (Ariz. App. 1980) (*Fleming I*), the

22 Arizona Court of Appeals addressed the proper course of action when an employee

23 contends that his dismissal was a pretext devised to discharge him in violation of merit

24 system rules.  A claim of bad faith discharge "raise[s] issues outside the merit system,

25 which provides only for review of the actions expressly enumerated in [A.R.S.] § 11-

26 356," but employees are not left without a remedy.  *Fleming v. Pima County*,

27 141 Ariz. 149, 151 (citing *Fleming I*, 125 Ariz. at 524).  They can seek alternative relief

28 by filing an action under a contract or tort theories, as Plaintiff does here.  *Id.*  Since

1    cause is not required for a layoff due to reorganization, the threshold issue is whether

2    Plaintiff's job was eliminated as a result of a true reorganization or whether the

3    reorganization was a pretext for eliminating Plaintiff without cause.

4            Plaintiff suggests two reasons for why the reorganization was a pretext.  First,

5    Plaintiff claims that Defendants eliminated Plaintiff's position and then hired a

6    replacement to perform the same job functions at the same pay but with a new job title.

7    Doc. 164, at 29.  The "Overall Budget Effect" chart (Doc. 170-3, at 10, Exhibit 26) shows

8    that, while the new Grant Coordinator will be paid a proposed salary of $28,549.00, or

9    approximately $6,000 less than the Administrative Coordinator position formerly held by

10   Barbara Herreras, the new Chief of Staff will be paid a proposed salary of $60,000, which

11   is approximately $9,900 more than the Director of Victim Services position formerly held

12   by Plaintiff.  These figures cast doubt on Defendants' claim that the reorganization

13   occurred for budget reasons.  Second, Plaintiff claims that Whiting's statements are

14   inconsistent because he said that eliminating Plaintiff's position was intended to provide

15   crime victims with better service rather than to cut the budget, but later admitted that he

16   did not know what Plaintiff's job functions or duties were.  *Id.*  At one point in his

17   deposition, Whiting appears to know very little about Plaintiff's job.  Doc. 168, at 23

18   (Whiting Dep. 387:2-9) (A: "I—I didn't work with Henry. I didn't—I don't—I—I really

19   didn't even know much of what he did, other than if a victim wanted to apply for

20   compensation, they needed to talk to Henry."  Q: "So, during the time you were working

21   there, did you have anything come to your attention that allowed you to form an opinion

22   that he was not doing his job right?"  A: "Not that I can recall, no.").  Yet later in his

23   deposition, Whiting claims that the Victim Services position was eliminated to provide

24   better services to victims.  Doc. 168, at 24 (Whiting Dep. 390:19-24) ("The Victim

25   Services position . . . that wasn't a budget issue. That wasn't we've got to save money on

26   Victim Services. It was we've got to provide better services to the victims.").  The

27   evidence creates a question of fact as to whether the reorganization was a pretext.

28           Plaintiff claims that he held a classified position and thus could be terminated only

1   for cause.  Doc. 164, at 28.  A.R.S. § 11-356, governing county employee merit systems,

2   provides that "[a]ny officer or employee in the classified civil service may be dismissed,

3   suspended or reduced in rank or compensation . . . only by written order, stating

4   specifically the reasons for the action."  There appears to be some dispute as to whether

5   Apache County has actually adopted a limited county employee merit system.

6   Defendants do not directly address this issue, arguing that it is irrelevant because even

7   under a merit system a layoff is not appealable.  Doc. 153, at 8, n.3.  The Court agrees

8   that layoffs are not appealable under a merit system (*see Fleming v. Pima County*, 141

9   Ariz. 149, 151 (a claim of bad faith discharge raises issues outside the merit system)), but

10   the existence of a merit system is still relevant because it may serve as the basis for

11   Plaintiff's breach of contract claim.  Apache County's handbook states that "[t]hese

12   policies are not intended to be a 'limited merit system' as defined by A.R.S. § 11-351 et

13   seq."  Doc. 154-1, at 13.  On the other hand, Plaintiff argues that the County admits that it

14   has the equivalent of a limited merit system under § 11-356(A), and that "[y]ears ago, the

15   County signed a letter to [Plaintiff] informing him he was being converted to a classified

16   position with all the rights of classified employees. Thus, he could be terminated only for

17   cause."  Doc. 164, at 27-28.  The Court finds it unhelpful that Plaintiff has not produced

18   this letter in support of his claim, but there appears to be a factual dispute as to the

19   existence of a merit system in Apache County, and the Court must interpret the facts and

20   inferences in the light most favorable to the Plaintiff.  *Anderson*, 477 U.S. at 255.  The

21   Court finds that there is an issue of material fact as to whether Defendants' reorganization

22   was a pretext to dismiss Plaintiff without cause, and whether Plaintiff was indeed a

23   classified employee that could be dismissed only for cause.   The Court will deny

24   summary judgment on Claim 6.

25         **G.      Claim 7 – Wrongful Termination.**

26         Wrongful termination claims are governed by the Arizona Employment Protection

27   Act (EPA), A.R.S. § 23-1501.   Plaintiff bases his wrongful termination claim on

28   A.R.S. § 23-1501(3)(d), which provides that an employee has a claim against an

1    employer for termination of employment if, in the case of a public employee, "the

2    employee has a right to continued employment under the United States Constitution, the

3    Arizona Constitution, Arizona Revised Statutes, [or] any applicable regulation, policy,

4    practice, or contract of the state[.]"  A.R.S. § 23-1501(3)(d).  Plaintiff acknowledges his

5    failure to cite the statute in his complaint, and requests leave to amend the complaint

6    accordingly.  Doc. 164, at 31, n.9.  While Plaintiff should have clearly stated the law that

7    he accuses Defendants of violating, for this particular claim of wrongful termination of

8    employment under Arizona law, only one statute is at issue and Defendants have

9    addressed it in their motion.  Doc. 153, at 9-10.  Therefore, the Court finds that the law

10   that Defendants are accused of violating is sufficiently clear.  *See Breeser v. Menta*

11   *Group, Inc.*, 2011 WL 1465523 (D. Ariz. April 18, 2011).  The Court will not allow

12   Plaintiff's requested amendment given the late stage of these proceedings.

13          Plaintiff claims that Apache County has a practice that classified employees are

14   fired only for cause.  Doc. 166, at 23 (citing depositions of Wengert and Joy).  If this

15   assertion is true, a jury may find that Plaintiff had a right to continued employment based

16   on the County's practices.   As the Court discussed above in its consideration of

17   Defendants' motion on Claim 6, there exists genuine issues of material fact as to whether

18   Apache County has a merit system and whether Plaintiff was a classified employee that

19   could only be terminated for cause.  The same factual disputes are relevant to Claim 7.

20   The Court will therefore deny summary judgment on Claim 7.

21          **H.      Claim 8 – Arizona Wage Act.**

22          Plaintiff claims that the County never gave him written notice as required by

23   A.R.S. § 11-356(A) when terminating his employment, and that because this procedure

24   was not followed, he was still employed by the County but has not been paid.  Doc. 35,

25   at 17.  Plaintiff claims treble damages for the County's purported lack of compliance with

26   the Arizona Wage Act.

27          A.R.S. § 23-355 provides: "[i]f an employer, in violation of the provisions of this

28   chapter, shall fail to pay wages due any employee, such employee may recover in a civil

1   action against an employer or former employer an amount which is treble the amount of

2   unpaid wages." The Ninth Circuit interprets the Wage Act to provide trebled damages

3   only for work that was actually performed. *Nieto-Santos v. Fletcher Farms*,

4   743 F.2d 638, 642 (9th Cir. 1984).

5         Plaintiff agrees that he has been timely paid wages for the hours he actually

6   worked. Doc. 164, at 32; *see also* Doc. 154, at 14, ¶ 87; Doc. 166, at 46, ¶ 87 (Plaintiff

7   admits that the County paid him all the money he was due within three days after his last

8   day of employment). There is no genuine issue of material fact as to trebled damages

9   under the Wage Act. The Court will grant summary judgment on Claim 8 in favor of

10  Defendants.

11  **I.    Claim 9 – Punitive Damages.**

12        Plaintiff's response makes clear that he seeks punitive damages only against

13  Whiting and only for violations of Plaintiff's civil rights. Doc. 164 at 32. Because the

14  Court has granted summary judgment on the civil rights claims, it will grant summary

15  judgment on the punitive damages claim as well.

16  **J.    Claim 10 – Prejudgment Interest.**

17        Prejudgment interest on a liquidated claim is a matter of right, not of discretion.

18  *L.M. White Contracting Co. v. St. Joseph Structural Steel Co.*, 15 Ariz. App. 260 (1971).

19  A claim is liquidated if the evidence furnishes data which, if believed, makes it possible

20  to compute the amount with exactness without reliance upon opinion or discretion.

21  *Constanzo v. Stewart Title & Trust*, 23 Ariz. App. 313 (1975). A claim is not considered

22  unliquidated merely because the jury must find certain facts in favor of the plaintiff in

23  order to determine the amount of damages. *Trus Joist Corp. v. Safeco Ins. Co.*,

24  153 Ariz. 95, 109 (1986) (citing *Homes & Sons Const. Co., Inc. v. Bolo Corp.*, 22 Ariz.

25  App. 303 (1974)).

26        Plaintiff alleges his claims for "lost wages, lost income, and out of pocket

27  consequential and incidental losses are liquidated sums certain, and, therefore, [P]laintiff

28  is entitled to prejudgment interest on those losses." Doc. 35, at 18. In response to

- 17 -

1    Defendants' argument that not all of Plaintiff's claims can be calculated with exactness,

2    Plaintiff says: "[s]ummary judgment is inappropriate on [Plaintiff's] claims for interest

3    and fees because if [P]laintiff is successful, he will be entitled to interest and fees."

4    Doc. 164, at 33.   *Cf. Trus Joist Corp.*, 153 Ariz. At 110 (affirming that prejudgment

5    interest was appropriate because third-party claims had been settled and defendant had

6    received a detailed list of itemized damages which, if accurate, entitled plaintiff to

7    reimbursement).

8            Upon reviewing Plaintiff's arguments, the Court concludes that the standard for

9    liquidated claims has not been met.   Among other claims for relief, Plaintiff requests

10   "[d]amages for loss of reputation, humiliation and mental and emotional distress and for

11   the physical manifestation of the harm."   Doc. 35, at 19.   Such damages cannot be

12   computed with exactness, without relying upon opinion or discretion.   *See Costanzo*, 23

13   Ariz. App. at 317.   The Court will grant summary judgment on Claim 10 in favor of

14   Defendants.

15   **V.      After-Acquired Evidence.**

16           The after-acquired evidence doctrine provides that "[i]f an employer terminates an

17   employee for a discriminatory reason and later discovers evidence upon which the

18   employer could have terminated the employee for a nondiscriminatory reason, such

19   evidence limits the remedies available to a plaintiff."   *E.E.O.C. v. High Speed*

20   *Enter., Inc.*, 2011 WL 3328698, at \*5 (D. Ariz. June 27, 2011).   Because the Court is

21   granting summary judgment in favor of Defendants on Plaintiff's discrimination claims,

22   the affirmative defense is moot and will be stricken.

23           **IT IS ORDERED:**

24           1.      Plaintiff's motion to stay (Doc. 151) is **denied**.

25           2.      Defendants' motions for summary judgment  (Docs. 152, 153) are **granted**

26   **in part** and **denied in part** as set forth in this order.

27

28

1        3.      The Court will set a final pretrial conference by separate order.

2        Dated this 15th day of November, 2011.

3

4

5

6                                                   David G. Campbell
                                                  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28